IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARON BADILLO,<br><br>    Plaintiff,<br><br>  v.<br><br>SANTA CLARA VALLEY HEALTH & HOSPITAL SYSTEM, ADULT CUSTODY HEALTH SERVICES; R. N. Supervisor CHRIS FERRY; and DR. ROBERT BOWMAN,<br><br>    Defendants.<br>                                            / | No. C 05-3370 WHA (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

      This is a civil rights case filed pro se by a state prisoner. The only remaining defendants, Bowman and Ferry, move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Plaintiff has opposed the motion and defendants[1] have filed a reply. For the reasons set out below, the motion is **GRANTED**.

## DISCUSSION

**A.  STANDARD OF REVIEW**

      Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to

---

[1] Subsequent references to "defendants" are to Bowman and Ferry, unless otherwise indicated.

judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.*

**B.     ANALYSIS**

Plaintiff contends that something snapped in his upper back while he was doing pull-ups. He alleges that defendant Bowman gave him only painkillers and rebuffed his requests for more treatment, despite his complaints that the pain was almost unbearable at times. Ferry, plaintiff alleges, had the authority to obtain proper treatment for him in her capacity as the officer in charge of answering grievances, but instead denied his grievances seeking better medical care. Plaintiff alleges that after he was transferred to San Quentin he was given an MRI which revealed "severe spinal damage." He underwent surgery to repair it.

Defendants contend in their motion that they are entitled to summary judgment because plaintiff did not exhaust his administrative remedies and because on the undisputed facts they did not violate his Eighth Amendment rights. In the reply they have withdrawn the exhaustion claim (Reply at 6-7), so only the merits issue will be addressed.

**1.     Medical Care Standard**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

2

*grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.*

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-36 & n.4 (1994); *Estelle v. Gamble*, 429 U.S. at 106.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment. *Id.; see, e.g., Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims stemming from alleged delays in administering pain medication, treating broken nose and providing replacement crutch, because claims did not amount to more than negligence); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

**2.    Discussion**

3

1       As defendants point out, there are no serious disagreements regarding the facts of the
2  case. Where there is some discrepancy, plaintiff's version is used below. The excerpts from
3  plaintiff's deposition attached as Exhibit A to the declaration of Kevin Hammon have been
4  disregarded as not properly authenticated. *See Orr v. Bank of America*, 285 F.3d 764, 774 (9th
5  Cir. 2002).

6       On May 4, 2004, plaintiff injured his back doing pullups (Am. Compl. ¶ 7). Although
7  the medical department was notified of the injury at about 6:50 pm, plaintiff was not seen by
8  medical staff until after had he taken a shower, at about 8 pm (Decl. Badillo ¶ 5). Plaintiff was
9  seen by a nurse after he came out of the shower, telling her that he had muscle pain on the left
10 side of his middle back and a tingling sensation in his left hand (Decl. Bowman ¶ 5 & Ex. A;
11 Decl. Badillo ¶ 6). His vital signs were normal (Decl. Bowman ¶ 5). The nurse noted that he
12 was able to move his left arm "for flexor, extension, abduction, adduction and rotation without
13 pain," but with "pain level '7' on raising [left] arm [more than] 90° & when moving [left] arm
14 forwards & backwards." (*Id.* at Ex. A (entry for 5/04/04))  He was provided with analgesic
15 balm on the advice of the charge nurse (*ibid.*; Decl. Badillo ¶ 6).

16      On May 10, 2004, plaintiff complained of pain and was seen by nurse Kozak (Decl.
17 Bowman, Ex. A; Decl. Badillo ¶ 7). She noted that he asked for Ben Gay and Motrin, that he
18 continued to exercise, that there was some edema on his left trapezius, and that he could not
19 raise his arm because of pain (Decl. Bowman, Ex. A). She diagnosed a muscle strain and
20 ordered Ben Gay and Motrin, plus an extra towel to make compresses, told him not to exercise
21 until the pain was gone, and noted that he should see a doctor if the pain persisted (*ibid.*)

22      On May 13, 2004, plaintiff asked to see a doctor, writing: "Ripped a back muscle &
23 Tricep on my left side[.] Pain is very bad[.] Need to see a doctor." (Decl. Badillo Ex. C at
24 [unnumbered] 1)  He was seen by defendant Bowman, an orthopedist, the next day (*id.*
25 [unnumbered] 2; Decl. Bowman, ¶¶ 2-3). Bowman says that at that visit plaintiff complained
26 "only" that he had pain in his left shoulder area and numbness in the second and third finger of
27 his left hand (Decl. Bowman ¶ 8). Plaintiff, on the other hand, says in his declaration that he
28 "unequivocally complained of substantial shoulder and back pain and of the fact that I was

4

1    experiencing numbness and radiating pain in my left hand." (Decl. Badillo ¶ 8) There thus is a
2    fact conflict as to what plaintiff told Bowman at the May 14 examination; for purposes of this
3    ruling, plaintiff's version will be accepted.

4    At the May 14 examination Bowman examined plaintiff's left shoulder and left hand,
5    and performed range of motion, vascular, neurological and bone fracture tests on his left hand
6    (Decl. Bowman ¶ 8). He also ordered an X-ray of the hand (*ibid.*). Plaintiff's results were
7    normal on all these tests and the X-ray showed no break (*ibid*.). Bowman therefore concluded
8    that plaintiff's injuries would resolve over time (*ibid*.). Plaintiff adds to this that he insisted his
9    back be "imaged" as well, but Bowman refused (Decl. Badillo ¶ 8). Plaintiff also contends that
10   he told Bowman that the Motrin was ineffective, which caused Bowman to accuse him of drug-
11   seeking behavior, say that he would not order any other medications, and tell him that if the
12   Motrin was not sufficient he would just have to deal with it (*ibid.*). Because there is no
13   evidence contradicting plaintiff's position as to the points in the last two sentences, his version
14   will be accepted for purposes of this ruling.

15   On May 17, 2004, plaintiff again asked for treatment for his pain by filing a written
16   request for service (*id.* ¶ 9 & Exh. D). In it he said "I pinched a nerv[e] on left side back, pain
17   shooting all the way down left arm pain unbearable!" (*Id.* Exh. D) In response he was
18   scheduled to see a doctor on May 28, 2004 (*ibid*.). Instead of having to wait that long, however,
19   he was seen by defendant Bowman on May 21 (Decl. Bowman ¶ 9; Decl. Badillo ¶ 9). At this
20   meeting, plaintiff informed Bowman that the Motrin was ineffective (Decl. Badillo ¶ 9).
21   Bowman examined plaintiff's left shoulder, observed that his deep tendon reflexes and
22   sensation were both intact and that his cervical range of motion was normal (Decl. Bowman ¶
23   9). An X-ray of the shoulder also was normal (*ibid*.). Bowman concluded that plaintiff had a
24   left acromioclavicular ligament sprain and a cervical strain (*ibid*.). Plaintiff contends that at this
25   visit Bowman "re-prescribed Motrin advising me that that's all he would order." (Decl. Badillo
26   ¶ 8) On the other hand, in his declaration Bowman says he prescribed both Motrin and
27   Baclofen, and the medical records support that (Decl. Bowman & Exh. A (entry for 5/21/04).
28   Because there is a genuine issue of material fact as to whether Bowman ordered Baclofen in

5

1  addition to Motrin, plaintiff's version will be adopted for purposes of this ruling.

2  On June 2, 2004, plaintiff submitted another written request for service, saying "I had a
3  med appointment on 5/28/04 and I did not go! I'd like to know why! I need to see a doc."
4  (Decl. Badillo Exh. F) The response indicates that the appointment was rescheduled to June 15,
5  2004 (*Ibid.*). Again plaintiff was seen earlier, however; he was examined by Bowman on June
6  4, 2004 (Decl. Bowman ¶ 10). Plaintiff told Bowman that he felt more comfortable and that his
7  pain had moved from the top of his shoulder to his scapular region (*ibid.*). Bowman observed
8  "minimal tenderness" and that plaintiff's range of motion and deep tendon reflexes were normal
9  (*ibid.*; *id.* at Exh. A (entry for 6/4/04). Motrin again was prescribed (*ibid.*). This was the last
10 time Bowman saw plaintiff (*ibid.*).

11 Plaintiff's claim against Nurse Ferry is based on her having responded to his grievance.
12 He filed a jail grievance on May 19, 2004, saying that he "pinched a nerve in the left upper part
13 of my back" and asking for pain medication and X-rays (Decl. Ferry Exh. B). After the
14 grievance had been forwarded to the third level, Ferry responded on May 27, 2004 (Decl. Ferry
15 ¶ 7). In the course of investigating the grievance she discovered that he had been seen by
16 Bowman two days after filing it, and the information set out above about Bowman's treatment
17 (*id.* ¶ 9). She upgraded Badillo's acuity level so his appointment with Bowman for June 3
18 would not be changed, and informed him of that fact (*ibid.*).

19 On June 18, 2004, plaintiff was transferred to San Quentin State Prison (Decl. Badillo ¶
20 11). His spine and left shoulder were X-rayed on July 8, 2004 (*id.* at Exh. H). As to his spine
21 the report is of "[n]ormal alignment and disc space caliber, except for minimal bony
22 hypertrophy of the left C6 uncinate process. No other suggestion of any significant
23 degenerative change." (*Ibid.*) An MRI six months later, on December 23, 2004, revealed
24 moderate to severe narrowing at C5-6 and C6-7 (*id.* Exh. I). Surgery was performed on
25 October 7, 2005 (*id.* ¶ 13).    For purposes of this ruling it is accepted that plaintiff told
26 Bowman at the May 14 examination that he had back pain, and asked that images be taken of
27 his back in addition to those of his hand that Bowman ordered. Even so, it is apparent from the
28 recitation above that this is a classic case of a difference of opinion between a prisoner and a

6

doctor regarding treatment – that is, the facts are not sufficient to show deliberate indifference to a serious medical need. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and have actually drawn the inference. *Id.* If a prison official should have been aware of the risk, but was not, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In this case Bowman delivered considerable medical care, and the fact that a spinal defect was found a year and half later does not show that the defect existed at the time of Bowman's treatment. On the undisputed facts, plus those facts alleged by plaintiff noted above as accepted for purposes of this ruling, Bowman did not know of and disregarded an excessive risk. His motion for summary judgment will be granted.

Plaintiff's claim against Ferry is in a sense derivative of that against Bowman. Because the medical care Bowman delivered did not violate the Eighth Amendment, Ferry could not be liable for violating plaintiff's right to adequate medical care when the claim against her is based on the same facts. For that reason, her motion also will be granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (document number 30 on the docket) is **GRANTED** as to the federal claims. The state-law malpractice claims are **DISMISSED** without prejudice. *See* 28 U.S.C. 1367(c) (3).

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April ___1___, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.05\BADILLO370.MSJ.wpd